Mark B. Wilson - Bar No. 137400
Eric A. Ybarra - Bar No. 334673
KLEIN & WILSON LLP
4770 Von Karman Avenue
Newport Beach, California 92660
(949) 631-3300; Facsimile (949) 631-3703
wilson@kleinandwilson.com; eybarra@kleinandwilson.com

Attorneys for Plaintiff SAREEN INCORPORATED dba MEL-O-DEE ICE CREAM

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION

| | |
|---|---|
| SAREEN INCORPORATED dba MEL-O-DEE ICE CREAM, a California corporation,<br><br>                    Plaintiff,<br><br>          v.<br><br>EDWIN GOMEZ, an individual; and DOES 1 through 10, inclusive,<br><br>                    Defendants. | Case No.  8:26-cv-769<br><br>**COMPLAINT FOR: (1) VIOLATION OF THE DEFEND TRADE SECRETS ACT (18 U.S.C. §§ 1831-1839); AND (2) BREACH OF WRITTEN CONTRACT; AND DEMAND FOR JURY TRIAL - *ACTION SEEKING STATEWIDE OR NATIONWIDE RELIEF*** |

Plaintiff Sareen Incorporated dba Mel-O-Dee Ice Cream ("Sareen"), alleges the following against defendants Edwin Gomez ("Gomez") and Does 1 through 10 (collectively, "Defendants").

**PARTIES**

1.     Sareen is a corporation licensed to do business in the State of California with its principal place of business in Santa Ana, County of Orange, California.

2.     Gomez is an individual who on information and belief resides in the County of Los Angeles, California.

3.     Does 1 through 10, inclusive, are defendants whose identities have not yet been ascertained. They are unknown individuals, partnerships, corporations, or some

1

other business entity that work with or aided and abetted Gomez's conduct described in this complaint or are otherwise liable for the conduct described in this complaint. On information and belief, each Doe defendant was somehow responsible for the damages caused in this case. As soon as the true identities and capacities of the Doe defendants have been ascertained, this complaint will be amended to reflect the true names and capacities of each Doe defendant.

4. Each defendant was the agent, alter-ego, employee, principal, partner, joint venturer, employer, or in some other capacity derivatively responsible for each of the acts of the other defendants.

## JURISDICTION AND VENUE

5. This Court has jurisdiction to hear and determine the first claim presented in this complaint pursuant to 28 U.S.C. § 1331 because the first claim alleges a civil action arising under the laws of the United States.

6. This Court has jurisdiction to hear and determine the second claim presented in this complaint pursuant to and 28 U.S.C. § 1367(a) because the second claim is so related to the first claim that they form part of the same case or controversy.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) because, on information and belief, Gomez resides in this District.

## FACTUAL BACKGROUND APPLICABLE TO ALL CLAIMS

**A.    Sareen's Business and Trade Secret Information**

8. Sareen is a frozen products and ice cream distributor in Southern California, and in some cases is the exclusive Southern California distributor for some of the largest and most popular ice cream brands.

9. Sareen imports nearly all the products it distributes to its customers from out of state, including Vermont and New Jersey, and does so with the intent to distribute those out of state products to California customers. Very few, if any, of Sareen's products are produced in California.

/ / /

2

10. Sareen also provides and services branded equipment, such as cabinet freezers, to stores and displays the ice cream products Sareen sells.

11. When Sareen provides a retailer with a branded freezer, Sareen requires the retailer to display only products that match the brand displayed on the freezer.

12. Over the years, Sareen has developed a secret retailer customer list. In most instances, Sareen developed the relationship with the retailers on this secret list over weeks, months, or years before the retailers agreed to purchase products from Sareen.

13. In most instances, Sareen's representatives cold-called, or cold-visited, these retailers several times (and make sale pitches) before the retailers agreed to purchase products from Sareen.

14. Sareen does not use lead aggregation services to identify potential customers. Instead, Sareen develops personal relationships with its customers and values face-to-face interactions.

15. Once Sareen develops a retailer into a customer, Sareen tracks order volume, sales metrics, and customer preferences. Sareen compiles contact information for key or lone decision makers at each retailer, who are typically the only retailer representative with the power to order products from Sareen.

16. Sareen has established personal and business relationships with these decision makers.

17. On information and belief, the information Sareen developed about each of its customers cannot be easily learned from only a few visits to the retailer or in a short period.

18. Sareen does not publish or make its customer information publicly available and does not share it with competitors.

19. Sareen has developed a propriety and customized pricing schedule for its customers that is not published or publicly available.

20. Sareen's customer list, pricing schedule, customer profile, and customer metrics described above are referred to herein as the "Trade Secret."

3

11444444

21. The Trade Secret derives independent economic value from not being generally known.

**B.      Sareen's Efforts to Maintain Confidentiality of its Trade Secret**

22. Sareen values its Trade Secret so much it has taken steps to secure its secrecy.

23. First, each Sareen employee signs a Confidentiality Agreement as part of the employee onboarding materials, specifically aimed and protecting Sareen's trade secrets (the "Confidentiality Agreement").

24. A copy of Gomez's Confidentiality Agreement is attached hereto as Exhibit 1 and is incorporated herein by reference.

25. The Confidentiality Agreement contains the following key provisions:

A.      "For the purposes of this agreement, 'information' shall mean any and all discoveries, ideas, facts, or any other information of whatever type and in whatever form, that is not publicly known, that is disclosed or otherwise made available to me or that was developed by me, alone or with others within the scope of my employment relationship with the Company, including, but not limited to discoveries, ideas, facts, or other information in the form of drawings, formulas, patents, analyses, compilations, devices, methods, techniques, programs, and processes, and that relate to promotion, marketing, licensing, advertising, distribution of goods or services, sales, mailing lists, supply sources, customers, customer lists, investigations, studies, litigation support or consulting." (Exhibit 1, par. 1(A).);

B.      "For the purposes of this agreement, 'trade secret' shall mean any and all information that derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use." (Exhibit 1,  par. 1(B).);

C.      "I understand that any and all information and trade secrets are received or developed by me and are disclosed to me in confidence. I agree that

4

during the term of my employment relationship and thereafter I will not directly or indirectly, except as required by the normal business of the Company or expressly consented to in writing by a duly authorized Company officer: (a) disclose, publish, or make available, other than to an authorized employee, officer, manager or director of the Company, any information or trade secrets; (b) sell, transfer or *otherwise use or exploit the information or trade secrets*; (c) permit the sale, transfer, use, or exploitation of any information or trade secrets by any third parties; or (d) remove from the Company's premises or retain upon termination any information or trade secrets, any copies of them, or any other tangible items containing or constituting information or trade secrets." (emphasis added) (Exhibit 1, par. 2.);

D.    "I agree that during the course of my employment relationship with the Company I will devote my best talents, efforts, and abilities in accordance with instructions and directions of the Company. I also agree that during the course of my employment relationship with the Company, *I will not directly or indirectly compete with the Company or aid any other individual or organization in competition with the Company. I also agree that following the termination of my employment with the Company I will not sell, transfer, or otherwise use or exploit the Company's information or trade secrets, nor will I take any action that would unfairly compete with the Company*, that would aid others in unfairly competing with the Company, or that would in any way breach the confidence that the Company has placed in me." (emphasis added) (Exhibit 1, par. 3.); and

E.    "The Company considers and I acknowledge that the Company's customer lists and all information relating to the Company's customers are trade secrets as defined in paragraph 1.B. of this agreement. I further understand that the business requirements, likes and dislikes of the Company's customers are intrinsic to the value of these trade secrets. I therefore agree that for a period of

5

two years immediately following the termination of my employment relationship by the Company I will not, either directly or indirectly, call upon or tend to solicit or take away any of the Company's customers, either for myself or for a third party." (Exhibit 1, par. 4.)

26.     Sareen supplies some of its customer information to certain employees via a company issued iPad, and Sareen takes security measures to ensure secrecy.

27.     Each iPad has a unique employee passcode to access the iPad. All customer information and pricing are available on a mobile point of service application, which is secured by a unique username and password. The employees who use these iPads can only view the customer information and pricing for customers on their service list for a given day. After an employee has completed service for a customer, the employee loses access to that customer's collected information. If an employee needs temporary access to a customer's information to service that customer on an emergency basis, the employee loses access to that customer's information as soon as the service is complete.

## C.     Sareen Hires Gomez

28.     Sareen hired Gomez as a driver/seller in or around 2005, and he was primarily responsible for Sareen's customers located in Ventura and Santa Barbara counties. Gomez signed his employee packet, including the Confidentiality Agreement on August 1, 2016.

29.     On or about November 4, 2024, Sareen became suspicious of Gomez's conduct because volume metrics indicated a significant drop in order size and sales for his assigned customers.

30.     After further investigation, Sareen learned Gomez was selling competitors' products to its customers, and Gomez was using Sareen's equipment to store and sell competitors' and non-branded products.

31.     On information and belief, Gomez was targeting Sareen's high-volume customers to sell competitors' products to them, and he invoiced them for buying those

/ / /

competitors' products while Sareen employed him. Sareen is informed and believes Gomez has kept all proceeds of these sales for himself.

32.　Sareen is informed and believes Gomez used Sareen's Trade Secrets to offer and sell competitors' products for his own gain and to undercut Sareen's prices to make the competitors' products more enticing to Sareen's customers.

33.　Sareen is informed and believes Gomez used Sareen's Trade Secrets to gain access to Sareen's customers under the guise of expanding Sareen's business.

34.　On November 10, 2024, Sareen confronted Gomez about this conduct, and Gomez initially denied competing with Sareen. Later that day, Gomez admitted to his conduct, and Sareen terminated him.

35.　Sareen is informed and believes Gomez continues to compete with Sareen using Sareen's Trade Secrets and has used this information to successfully divert significant business from Sareen.

## FIRST CLAIM FOR RELIEF

### FOR VIOLATION OF THE DEFEND TRADE SECRETS ACT

### (18 U.S.C. §§ 1831-1839)

### (Against Gomez and DOES 1 through 10)

36.　Sareen incorporates by reference paragraphs 1 through 35 of this complaint as though fully set forth.

37.　Sareen possessed a trade secret.

38.　Defendants misappropriated the Trade Secret as described in this complaint.

39.　Defendants' misappropriation caused or threatened damage to Sareen in an amount not less than $350,000.

40.　Sareen's Trade Secret is related to products used in, or are intended to be used in interstate commerce because Sareen imports products from out-of-state producers with the intent of distributing them to its customers within California.

/ / /

## SECOND CLAIM FOR RELIEF

## FOR BREACH OF WRITTEN CONTRACT

### (Against Gomez)

41.    Sareen incorporates by reference paragraphs 1 through 35 and 37 to 40 of this complaint as though fully set forth.

42.    Sareen entered into the Confidentiality Agreement attached as Exhibit 1 with Gomez on August 1, 2016.

43.    Sareen performed all the significant things that the Confidentiality Agreement required it to do, except for those obligations that it was excused from or prevented from performing.

44.    Gomez breached the Confidentiality Agreement by, among other ways, failing to maintain the secrecy of Sareen's Trade Secret and using that Trade Secret to compete against Sareen during and after his employment.

45.    Gomez's conduct caused Sareen to suffer harm in an amount not less than $350,000.

46.    Gomez's breach of the Confidentiality Agreement was a substantial factor in causing Sareen's harm.

47.    Sareen is entitled to damages in an amount to be proven at trial, together with interest as provided by law.

## PRAYER FOR RELIEF

WHEREFORE, Sareen prays for the following relief against Defendants.

**As to the First Cause of Action:**

1.    Actual damages, according to proof, but not less than $350,000;

2.    Damages for unjust enrichment;

3.    Disgorgement of Defendants' profits, according to proof;

4.    Seizure of the Trade Secrets;

5.    Reasonable royalty;

6.    Double damages, according to proof; and

8

7. Attorneys' fees, according to proof.

**As to the Second Cause of Action:**

1. Damages, according to proof, but not less than $350,000.

**As to All Causes of Action:**

1. Injunctive relief (i.e., an order instructing Defendants from using the Trade Secret and an order instructing Defendant to return the Trade Secret to Sareen);

2. Prejudgment interest;

3. Costs of suit; and

4. Any and all relief the court may deem just and proper.

Respectfully submitted,

KLEIN & WILSON LLP

Dated:  March 30, 2026

By: /s/ *Mark B. Wilson*
Mark B. Wilson
Attorneys for Plaintiff Sareen Incorporated
dba Mel-O-Dee Ice Cream

**DEMAND FOR JURY TRIAL**

Pursuant to Fed. R. Civ. P. 38, plaintiff Sareen Incorporated dba Mel-O-Dee Ice Cream hereby demands a trial by jury as to all issues so triable.

Respectfully submitted,

KLEIN & WILSON LLP

Dated:  March 30, 2026

By: /s/ *Mark B. Wilson*
Mark B. Wilson
Attorneys for Plaintiff Sareen Incorporated
dba Mel-O-Dee Ice Cream